Corey D. ANDERSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–98–00312–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Jan. 6, 2000.

Charles Freeman, Houston, for Appellant.

Barbara A. Drumheller, John B. Holmes, Houston, for State.

Panel consists of Justices COHEN, NUCHIA, and DUGGAN.*

* The Honorable Lee Duggan, Jr., retired Justice, Court of Appeals for the First District of

## OPINION

LEE DUGGAN, Jr., Justice (Retired).

A jury found appellant, Corey D. Anderson, guilty of aggravated assault on a public servant. The court assessed punishment at three years in prison. Appellant urges ten points of error on appeal. We reverse and remand.

### I. Facts

It is undisputed that the complainant, Officer Mark Hamilton, a peace officer employed by Texas Southern University (TSU), was dressed in civilian clothes and driving an unmarked car, a black Grand Prix with tinted windows, when he encountered appellant.[1] Appellant swerved in front of Hamilton and ran a stop sign. Hamilton called on his radio for a marked unit to help him, and followed appellant. After several minutes, appellant pulled his car over and let a passenger out. Hamilton testified that he then approached appellant's car, identified himself as a police officer, and showed appellant his badge. Hamilton testified that appellant responded, "f—you," and drove away.

Hamilton pursued appellant, but because his car did not have a siren or police lights, he could only follow appellant closely, not stop him. When appellant realized he was being followed, he began speeding, driving over 70 miles per hour in a 30 mile per hour zone. Officer Steinberg, who was uniformed and driving a marked TSU police car, responded to Hamilton's radio call and joined in the chase of appellant's car with his siren blaring and lights flashing.

Appellant finally stopped his car on the front lawn and driveway of his mother's house. Hamilton and Steinberg approached appellant's car with their guns drawn and ordered him to turn off the

ignition and get out of the car.[2] Both officers testified that they identified themselves as police officers. Appellant's teenage sister came out of the house and saw the two trying to get appellant out of the car. Both officers asked appellant's sister to tell her brother to get out. Appellant stayed in the car and yelled at his sister, asking where his mother was. Hamilton told appellant's sister to go back into the house, and she complied.

Hamilton testified that he was standing approximately eight feet behind appellant's car when appellant made eye-contact with him through the rear view mirror, put the car in reverse, backed up suddenly, struck him on the knee, and fled the scene. Steinberg testified that he had to jump out of the way to avoid being hit, and that he attempted unsuccessfully to pursue appellant.

Appellant testified that he decided, several days later, to file a complaint against Steinberg and Hamilton with the Houston Police Department because he believed the two were trying to carjack his car. An arrest warrant had already been issued for appellant, and he was arrested by Houston police at the station.

### II. Error in the Jury Charge

Appellant's points of error one through seven complain of error in the jury charge.

#### a. Self–Defense

■ In point of error one, appellant argues that the trial court erred by denying his requested special charge on self-defense. *See* Tex. Penal Code § 9.31 (titled "Self–Defense"). The State responds that appellant was not entitled to a self-defense instruction because he did not admit the conduct charged. We agree with the State.

---

Texas at Houston, participating by assignment.

1. When asked why the windows were tinted, Hamilton said, "It's called a cool car, sir ... so we can travel around incognito."

2. When the officers approached appellant's car, they both noticed a small child sitting next to appellant on the front seat. Both officers holstered their weapons after seeing the child. The child was the daughter of appellant's girlfriend.

Self-defense is a justification for one's actions, which necessarily requires admission that the conduct occurred. *See Young v. State*, 991 S.W.2d 835, 838 (Tex. Crim.App.1999) (discussing defense of necessity as justification); *MacDonald v. State*, 761 S.W.2d 56, 60 (Tex.App.—Houston [14th Dist.] 1988, pet. ref'd). Self-defense is inconsistent with a denial of the conduct. *Sanders v. State*, 707 S.W.2d 78, 81 (Tex.Crim.App.1986); *MacDonald*, 761 S.W.2d at 60. To raise the issue of self-defense, appellant must admit the committed offense and then offer self-defense as justification. *See Young*, 991 S.W.2d at 839 (finding defendant was not entitled to instruction on defense of necessity because he argued he did not commit offense).

Here, appellant neither admitted committing the offense nor presented evidence on the issue of self-defense. To the contrary, he denied backing up his car before driving away, denied striking Hamilton with his car, denied threatening the officers in any way, and denied knowing Hamilton was an officer. Appellant maintained that he drove away to escape from his two pursuers because he did not know they were peace officers and, believing they were trying to carjack him, he feared for his safety. Appellant presented witnesses who also testified that he did not reverse his car before driving away, and that it would have been impossible for him to reverse his car because of the way he was positioned in the driveway. If the jury believed appellant's version of the incident, there was no issue of self-defense to decide.

Because appellant did not admit the offense and then offer justification for it, the issue of self-defense was not raised, and the trial court did not err in denying the instruction. *See Young*, 991 S.W.2d at 839.

We overrule appellant's point of error one.

### b. Mistake of Fact

In points of error four and five, appellant argues the trial court erred by denying a special charge on mistake of fact. He argues that the evidence raised the defense because, through mistake of fact, he did not know Hamilton was a public servant, and that he formed a reasonable belief that Hamilton was trying to carjack him, rather than lawfully discharging an official duty.

A defendant is entitled to an instruction on any defensive theory, including mistake of fact, if the issue is raised by the evidence, whether that evidence is strong or weak, unimpeached or contradicted, and regardless of what the trial court may think about the credibility of the evidence. *Hamel v. State*, 916 S.W.2d 491, 493 (Tex.Crim.App.1996); *Walker v. State*, 994 S.W.2d 199, 201 (Tex.App.—Houston [1st Dist.] 1999, pet. ref'd). Neither the trial nor the appellate court decide whether appellant's mistaken belief was reasonable because this is a question left for the jury. *See Granger v. State*, 3 S.W.3d 36, 37 (Tex.Crim.App.1999). This rule is designed to insure that the jury, not the judge, will decide the credibility of the evidence. *Id.* If the evidence viewed in a light most favorable to appellant does not establish a mistake of fact defense, an instruction is not required. *Id.*

> Mistake of fact is defined as follows:
> It is a defense to prosecution that the actor through mistake formed a reasonable belief about a matter of fact if his mistaken belief *negated the kind of culpability* required for commission of the offense.

Tex. Penal Code § 8.02 (emphasis added); *Williams v. State*, 930 S.W.2d 898, 902 (Tex.App.—Houston [1st Dist.] 1996, pet. ref'd). Here, one element of the charged offense, aggravated assault of a public servant, is that appellant knew Hamilton was a public servant.[3] *See* Tex. Penal

---

**3.** Aggravated assault of a public servant is committed if a person intentionally or knowingly threatens a person *whom the actor knows is a public servant* while the public

Code § 22.02(b)(2). Thus, to be entitled to the mistake of fact instruction, appellant's evidence must have shown that, through mistake, he formed a reasonable belief that Hamilton was not a police officer.

Relying on *Giesberg v. State*, 984 S.W.2d 245, 246–47 (Tex.Crim.App.1998), the State argues that appellant was not entitled to an instruction on mistake of fact because the defensive theory alleged here, i.e., that appellant did not know Hamilton was a police officer, merely negates an element of the offense. In *Giesberg*, the Court of Criminal Appeals concluded that the defensive issue of alibi constitutes no more than a negation of an essential element of the State's burden of proof, and, therefore, the defendant was not entitled to an instruction on his defensive issue of alibi. *Id.* The court based this conclusion upon the fact the Legislature has not made alibi a statutory defense. *Id.* The present case is distinguishable from *Giesberg* because the defensive issue of mistake of fact *is* a statutory defense. *See* Tex. Penal Code § 8.02.

Our review of the evidence shows that, viewing the evidence in the light most favorable to appellant, the defense of mistake of fact was abundantly raised—so much so that the State was permitted to introduce evidence of appellant's prior conviction for evading arrest, over objection, for the stated purpose of rebutting appellant's defensive theory of mistake.[4] Moreover, appellant argued throughout that he did not know Hamilton was a police officer. According to appellant's version of the incident, when he stopped to allow his passenger out of the car at TSU, Hamilton neither approached him nor identified himself as a police officer. Later, at his mother's house, appellant did not recognize Hamilton as an officer because he was not in uniform, and he was in an unmarked car. Hamilton admitted there was no way for a normal citizen to look at his car and know that it belonged to a peace officer. Appellant's mother testified that Hamilton returned to her house after the incident to tell her what happened. According to her, Hamilton said, "I don't blame your son for not stopping. He didn't know who I was."

Appellant claimed that Steinberg did not identify himself as a police officer either. He testified that Steinberg wore a beige uniform[5] that appeared to be that of a security guard, instead of the familiar blue uniform worn by Houston Police Officers. The car Steinberg drove was a white Caprice with "Warning—Police" printed in three to four inch letters beneath the window on the passenger door of the car. Steinberg's car also had a siren, alternating flashing headlights, a dash light, and two alternating grill lights.

We conclude appellant was entitled to an instruction on mistake of fact, and the trial court erred in denying the instruction. *See Granger*, 3 S.W.3d at 37. Before we analyze this error in points four and five for harm, we consider whether there were other charge errors.

### c. Presumption

In points of error two and three, appellant argues the trial court erred by denying a special charge under Penal Code section 2.05(2) after giving a section 22.02(c) instruction on a presumed fact. We agree.

■ The section 2.05(2) instruction was necessary because the jury charge included a section 22.02(c) instruction on a presumed of fact, which stated: *The defendant is presumed to have known the person assaulted was a public servant if*

---

servant is lawfully discharging an official duty. Tex. Penal Code § 22.02(b)(2) (emphasis added).

**4.** The State argued the prior conviction was admissible under Rule of Evidence 404(b) to show absence of mistake.

**5.** Steniberg testified that he wore a blue uniform on the date of the incident, that he never owned a beige uniform, and that TSU officers do not have beige uniforms.

*the person was wearing a distinctive uniform or badge indicating the person's employment as a public servant.*

When the trial court includes a section 22.02(c) instruction on a presumed fact, section 2.05(2) requires that the trial court *"shall charge the jury as follows:"*

 (A) that the facts giving rise to the presumption must be proven beyond a reasonable doubt;

 (B) that if such facts are proven beyond a reasonable doubt the jury may find that the element of the offense sought to be presumed exists, but it is not bound to so find;

 (C) that even though the jury may find the existence of such element, the state must prove beyond a reasonable doubt each of the other elements of the offense charged; and

 (D) if the jury has a reasonable doubt as to the existence of a fact or facts giving rise to the presumption, the presumption fails and the jury shall not consider the presumption for any purpose.

The language of Penal Code § 2.05(2) is mandatory. *See Rudd v. State*, 921 S.W.2d 370, 372–73 (Tex.App.—Texarkana 1996, pet. ref'd) (holding it was error not to include a section 2.05(2) instruction in a case of aggravated assault against a public servant).[6] The section 22.02(c) presumption, without the mandated section 2.05(2) instruction, was a mandatory presumption; it required the jury to infer that appellant knew Hamilton was an officer if the jury found Hamilton wore a distinctive uniform or badge indicating his employment as a public servant. *See Willis v. State*, 790 S.W.2d 307, 309–10 (Tex.Crim.App.1990) (holding that mandatory presumptions are unconstitutional). Thus, we conclude the

trial court erred by not including the section 2.05 instruction in the charge. *See Rudd*, 921 S.W.2d at 372–73.

## III. Harm Analysis of Jury Charge Error

 In reviewing jury charge error, we apply the usual *Almanza* standard which depends upon whether appellant preserved the error. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1984); *Ramos v. State*, 991 S.W.2d 430, 434 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd). If appellant preserved error, we reverse if we find any actual harm, regardless of the degree. *Abdnor v. State*, 871 S.W.2d 726, 739–40 (Tex.Crim.App.1994). We assess harm from preserved error in light of the entire charge, considering (1) the charge itself; (2) the state of the evidence, including contested issues and the weight of probative evidence; (3) arguments of counsel; and (4) any other relevant information revealed by the record of the trial as a whole. *Almanza*, 686 S.W.2d at 171. By contrast, a defendant who did not preserve charge error has the burden on appeal to show the erroneous charge resulted in such egregious harm that he did not receive a fair and impartial trial. *Id.*

We consider whether appellant preserved error in the denial of the mistake of fact instruction in light of *Williams v. State*, 930 S.W.2d 898, 903 (Tex.App.—Houston [1st Dist.] 1996, pet ref'd), and *Hefner v. State*, 735 S.W.2d 608, 620 (Tex. App.—Dallas 1987, pet. ref'd). In *Williams*, this Court held the defendant did not preserve error because he did not specify how the mistake of fact defense applied to the facts of that case. 930 S.W.2d at 903. In *Hefner*, the court held the defendant did not preserve error because he requested only a general mistake

---

**6.** In *Rudd*, the court held the omission of a section 2.05(2) instruction was error, but the harm was not egregious, because the great weight of the evidence showed the officers were physically close to the defendant, in uniform, and they arrived in marked police cars. 921 S.W.2d at 373. There was only minimal evidence to rebut the presumption. *Id.* The present case is different because the complainant, Hamilton was admittedly not in uniform and not in a marked car; whether he identified himself as an officer by showing his badge was disputed.

of fact instruction that completely failed to apply the defense to the facts of the case. 735 S.W.2d at 620. The *Hefner* court reasoned that the instruction sought did not apprise the trial court of *what* mistake of fact the defendant was relying upon, when two possible mistakes were argued at trial. *Hefner*, 735 S.W.2d at 620. In both cases, the courts required the defendant to show egregious harm. *Williams*, 930 S.W.2d at 903; *Hefner*, 735 S.W.2d at 620.

In the present case, although appellant did not dictate into the record the specific mistake of fact charge requested, it was obvious to the trial court that he wanted a mistake of fact instruction on the only mistake of fact argued at trial, i.e., whether appellant knew Hamilton was a police officer.

Having determined appellant preserved this error in the charge, we examine the error in light of the entire jury charge, the evidence presented, and arguments of counsel. We reverse if there is any actual harm to appellant. *See Almanza*, 686 S.W.2d at 171; *see Ramos*, 991 S.W.2d at 434.

Mistake of fact was appellant's only defense. His knowledge of Hamilton's status was an element of the offense charged and was contested throughout; it was undisputed that Hamilton was not in uniform and was not in a marked police car. Appellant testified he did not know Hamilton was an officer, but thought he was being followed and carjacked; appellant's counsel argued to the jury that appellant did not know Hamilton was an officer and was in fear for his life. Hamilton's and Steinberg's testimony was in marked contrast to appellant's. The harm from the absence of a mistake of fact instruction was accentuated by the presence of the mandatory presumption that required the jury to infer that appellant knew Hamilton was an officer because of his badge.

We find the erroneous charge harmed appellant by depriving him of the right to have the jury consider his only defense.

We sustain appellant's points of error two through five.

## IV. Legal and Factual Sufficiency of the Evidence

In points of error nine and ten, appellant argues the evidence was legally and factually insufficient to support the guilty verdict. Specifically, he argues that there was no evidence that he threatened Hamilton with imminent bodily injury.

We measure the sufficiency of the evidence against the "hypothetically correct jury charge." *Malik v. State*, 953 S.W.2d 234, 239–40 (Tex.Crim.App.1997); *Borrego v. State*, 966 S.W.2d 786, 790 (Tex. App.—Houston [1st Dist.] 1998, no pet.). The hypothetically correct jury charge for a case is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant is tried, without regard to the specific wording of the jury charge actually given. *Malik*, 953 S.W.2d at 239–40; *Borrego*, 966 S.W.2d at 790.

In reviewing the legal sufficiency of the evidence, we must view the evidence in the light most favorable to the verdict and determine whether any trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Whitaker v. State*, 977 S.W.2d 595, 598 (Tex. Crim.App.1998). The jury is entitled to judge the credibility of the witnesses and may choose to believe all, some, or none of the witness's testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex.Crim.App.1986). It is the jury's role to reconcile conflicts in the evidence. *Heiselbetz v. State*, 906 S.W.2d 500, 504 (Tex.Crim.App.1995).

Hamilton testified that as he stood about eight feet behind appellant's car, appellant made eye-contact with him through the rear-view mirror, reversed his car, and struck him in the leg. Aiming a

deadly weapon at a supposed victim is sufficient evidence of a threat to sustain an aggravated assault conviction. *See Rodriguez v. State*, 955 S.W.2d 171, 174 (Tex. App.—Amarillo 1997, no pet.) (pointing a gun at a supposed victim sufficient evidence of threat for aggravated assault). Appellant does not dispute that a car is a deadly weapon. *See* Tex. Penal Code § 1.07(a)(17)(B) (defining deadly weapon as anything, in the manner of its use, capable of causing death or serious bodily injury). Viewing the evidence in the light most favorable to the verdict, we find a rational juror could have concluded that appellant aimed the car and reversed into Hamilton; thus, the evidence was legally sufficient to establish the threat necessary for aggravated assault. *See Rodriguez*, 955 S.W.2d at 174.

In reviewing the factual sufficiency of the evidence, we consider all of the evidence and will set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim.App.1996).

The evidence that contradicts appellant's intent to threaten Hamilton is appellant's own testimony and that of three other witnesses who stated he did not reverse his car and strike Hamilton. When this evidence is considered against Hamilton and Steinberg's testimony, we conclude that the verdict was not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.

We overrule appellant's points of error nine and ten.

We reverse and remand for a new trial.[7]

Justice NUCHIA concurring in result only.

---

7. Because we sustain points of error two through five, we do not address appellant's points of errors six through eight. Points of error six and seven assert the trial court erred by denying a special jury charge under Code of Criminal Procedure art. 38.23(a). In point of error eight, appellant argues ineffective assistance of counsel.